UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KELLY BIERMAKER,                          Case No. 14-12301

           Plaintiff,                 Paul D. Borman
v.                                        United States District Judge

COMMISSIONER OF SOCIAL SECURITY,          Stephanie Dawkins Davis
                                          United States Magistrate Judge

           Defendant.

_____/

**REPORT AND RECOMMENDATION
CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkts. 23, 24)**

I.   **PROCEDURAL HISTORY**

    A.   Proceedings in this Court

On June 11, 2014, plaintiff filed the instant suit seeking judicial review of
the Commissioner's decision disallowing benefits.  (Dkt. 1).  Pursuant to 28
U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), District Judge Paul D. Borman
referred this matter to Magistrate Judge Michael Hluchaniuk for the purpose of
reviewing the Commissioner's decision denying plaintiff's claims.[1]  (Dkt. 3).  The
parties filed cross-motions for summary judgment and Judge Hluchaniuk issued a
report and recommendation on March 26, 2015.  (Dkt. 11).  On April 8, 2015,

---

[1] This matter was reassigned to the undersigned Magistrate Judge on January 11, 2016, pursuant
to administrative order.  (*See* Text-Only Order dated January 11, 2016).

plaintiff filed objections to the R&R (Dkt. 12), and the Commissioner requested two extensions to file a response.  (Dkts. 13, 16).

Plaintiff was initially represented by different counsel in this matter. However, prior to the Commissioner filing a response to plaintiff's objections, the matter was stayed and a three judge panel of this court determined that plaintiff's prior counsel was no longer permitted to represent plaintiff.  (Dkt. 17).  Plaintiff's prior counsel has withdrawn and plaintiff is now being represented by new counsel.  (Dkt. 18, 21).  On January 13, 2016, Judge Borman issued an order finding as moot the previously filed cross-motions for summary judgment (Dkt. 9, 10), and Judge Hluchaniuk's report and recommendation (Dkt. 11).

On February 17, 2016, the court set a new briefing schedule for the parties. (Dkt. 22).  Plaintiff's motion for summary judgment was due by March 9, 2016. That scheduling order specifically provided that "**PLAINTIFF'S FAILURE TO TIMELY FILE A MOTION FOR SUMMARY JUDGMENT WILL RESULT IN A RECOMMENDATION OF DISMISSAL.**"  (Dkt. 22) (emphasis in original).  Plaintiff did not file her motion by the March 9th deadline.  On March 10, 2016, the Commissioner filed a motion to dismiss, or in the alternative for summary judgment.  (Dkt. 23).  On March 21, 2016, plaintiff filed a motion for summary judgment together with a motion to extend time to file her motion. (Dkts. 24, 25).  On March 21, 2016, the undersigned granted by text-only order

plaintiff's motion to extend time to file her motion for summary judgment. No reply has been filed. The cross-motions are now ready for report and recommendation.

      B.    <u>Administrative Proceedings</u>

Plaintiff filed the instant claim for a period of disability and disability insurance benefits on December 8, 2011, alleging disability beginning May 30, 2008. (Dkt. 6-5, Pg ID 130-136). The Commissioner initially denied plaintiff's disability application on March 20, 2012. (Dkt. 6-3, Pg ID 72-81). Thereafter, plaintiff requested an administrative hearing, and on January 4, 2013, she appeared with counsel before Administrative Law Judge ("ALJ") JoErin O'Leary who considered her case de novo. (Dkt. 6-2, Pg ID 53-70). In a February 7, 2013 decision, the ALJ determined that plaintiff was not disabled within the meaning of the Social Security Act. (Dkt. 6-2, Pg ID 14-52). The ALJ's decision became the final decision of the Commissioner on April 9, 2014, when the Social Security Administration's Appeals Council denied plaintiff's request for review. (Dkt. 6-2, Pg ID 26-29). Plaintiff filed this suit on June 11, 2014. (Dkt. 1).

For the reasons set forth below, the Court concludes that substantial evidence supports the decision of the Administrative Law Judge. The Court therefore **RECOMMENDS** that Plaintiff's Motion for Summary Judgment (Dkt. 24) be **DENIED**, that Defendant's Motion for Summary Judgment (Dkt. 23) be

**GRANTED**, and that, pursuant to 42 U.S.C. § 405(g), the decision of the Commissioner of Social Security be **AFFIRMED**.

## II.   FACTUAL BACKGROUND

### A.   Plaintiff's Background

Plaintiff had past relevant work as a bus monitor.  (Dkt. 6-2, Pg ID 47).  However, plaintiff testified, and her earnings records support, that she has not worked since May 30, 2008, her alleged onset date.  (Dkt. 6-2, Pg ID 44).  Plaintiff completed the eleventh grade and has not finished any additional education or training.  (*Id*. at 56).  Plaintiff claims that fibromyalgia is keeping her from working and that she experiences pain in her arms, legs, feet and hands.  (*Id*. at 57).

### B.   The ALJ's Findings

The ALJ applied the five-step disability analysis to plaintiff's claims and found at step one that between the alleged onset date (May 30, 2008) and the last date insured (December 31, 2013), plaintiff did not engage in any substantial gainful activity.  (Dkt. 6-2, Pg ID 44).  At step two, the ALJ found that plaintiff had the following severe impairments: fibromyalgia and scoliosis.  (*Id*.)  At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listings in the regulations.  (*Id*.)

The ALJ determined that plaintiff had the residual functional capacity (RFC) to perform "light work" as defined in 20 C.F.R. § 404.1567(b) "except that she could only occasionally climb, balance, stoop, kneel, crouch, or crawl."  (Dkt. 6-2, Pg ID 45).  At step four, the ALJ determined that plaintiff was capable of performing her past relevant work as a bus monitor because her past work "does not require the performance of work-related activities precluded by the claimant's residual functional capacity[.]"  (Dkt. 6-2, Pg ID 47).  The vocational expert ("VE") who testified at the administrative hearing agreed, concluding that plaintiff could return to her work as a courier as the demands of her past work would not exceed the RFC.  (Dkt. 6-2, Pg ID 48-49).  The ALJ, therefore, determined that plaintiff was not under a disability at any time from May 30, 2008 through the date of the decision.  (*Id.* at 49).

C.   Plaintiff's Claims of Error

Plaintiff argues that the ALJ applied her own medical interpretations and relied on negative medical findings that were irrelevant to plaintiff's conditions to impugn her credibility, while disregarding findings that established the severity of her impairments.  As a result, plaintiff argues that the RFC is not supported by substantial evidence and is contrary to the evidence in the record.  (Dkt. 24).  In this case, the ALJ determined that plaintiff was capable of performing a full range of "light work" except that she could only occasionally climb, balance, stoop,

5

kneel, crouch, or crawl.  Plaintiff argues that the ALJ based the RFC on an

inaccurate summary of plaintiff's stated limitations:

> The claimant . . . . testified that, due to burning extremity
> pain related to fibromyalgia, she could perform any
> activity for no more than 30 minutes before needing to
> rest. Additionally, the claimant reported that her leg pain
> flared at night, making it very difficult to get to sleep.
> She also stated that she could not lift more than 10
> pounds or perform any repetitive reaching, bending, or
> stooping, because these motions would aggravate her
> symptoms.

(Dkt. 6-2, Pg ID 46).  Contrary to the ALJ's conclusions, rather than specifying an

amount of weight that she was able to lift, plaintiff says that she testified that *any*

lifting caused "really bad pains in [her] wrists and in [her] hands" causing her to

drop things "a lot."  (*Id*., Pg ID 58).  In addition, plaintiff and her husband noted

that the pain she experiences is as bad or worse at night than during the day,

leaving her unable to get sufficient sleep.  Plaintiff additionally argues the ALJ

disregarded her long history of fibromyalgia.  On this point, plaintiff claims that

the ALJ applied her own medical interpretation to the record, and violated SSR

12-2p regarding how to properly evaluate a plaintiff suffering with fibromyalgia.

Plaintiff further argues that the ALJ recited only a few selective findings, none of

which supported the ultimate conclusion that plaintiff could perform all of the

exertional requirements of light work.  Plaintiff additionally asserts that her

hearing testimony regarding her limitations is fully consistent with her statements

to State consultative examiner, Dr. Siva Sankaran.  Plaintiff maintains that she can perform "any activity for no more than 30 minutes before needing to rest" and that she cannot "lift more than 10 pounds or perform any repetitive reaching, bending, or stooping, because these motions would aggravate her symptoms."

In sum, plaintiff argues that the ALJ made an unsupported claim that plaintiff's daily activities were inconsistent with a finding of disability, but identified no such inconsistency with plaintiff's testimony regarding her limitations.  Further, plaintiff claims that the ALJ violated SSR 12-2p when she made no attempt to address any of the statements from plaintiff and her husband about one of plaintiff's most severe manifestations of her fibromyalgia, impaired sleep.  For these reasons, plaintiff argues that the ALJ's conclusions were not supported by substantial evidence and were contrary to the evidence in the record.

### D.    The Commissioner's Motion for Summary Judgment

On March 10, 2016, the Commissioner filed a motion to dismiss, or alternatively for summary judgment.  (Dkt. 23).  The Commissioner indicated that if the Court does not dismiss plaintiff's complaint, the question becomes whether the ALJ's decision is supported by substantial evidence.  Because the undersigned accepted plaintiff's motion for summary judgment, the Commissioner argues that the ALJ's conclusion should be affirmed because Magistrate Judge Michael Hluchaniuk's prior report and recommendation determined that the ALJ's

7

conclusion was supported by substantial evidence.  The Commissioner cites this

portion of Judge Hluchaniuk's R&R in support:

> Here, the ALJ determined that plaintiff had the residual
> functional capacity to return to work as a bus monitor.
> (Tr. 22). And, the ALJ made an alternative step five
> finding that plaintiff was capable of performing other
> work existing in significant numbers in the national
> economy. (Tr. 23-24). Significantly, neither plaintiff's
> primary care physician, Dr. [Evanture] Bernardino, or the
> State consultative examiner, Dr. [Siva] Sankaran,
> observed any abnormalities in plaintiff's gait or station.
> (Tr. 21, citing [Tr. 196, 212]). Dr. Sankaran further did
> not report any weakness in plaintiff's extremities or
> decreases in her range of motion, which the ALJ
> concluded further supported that plaintiff would be
> capable of a range of light work. (Tr. 22, citing [Tr.
> 196]). The ALJ noted that while plaintiff's rehabilitation
> specialist Dr. LaClair observed decreased or altered
> sensation in the upper and lower extremities, an August
> 8, 2012 electromyogram showed no evidence of
> right-sided neuropathy, radiculopathy, or plexopathy.
> (Tr. 21 [citing Tr. 230]). The ALJ also noted that the
> record contained no medically acceptable imaging
> evidence to establish degenerative joint or disc disease,
> and that plaintiff was able to touch her toes and fully
> squat on musculoskeletal testing. (Tr. 21 [citing Tr.
> 196]). The ALJ also considered the opinion evidence of
> State agency medical consultant Dr. Margaret Fountain,
> who concluded that plaintiff was capable of light work
> with occasional postural activities, but no environmental
> or manipulative limitations. (Tr. 22, citing [Tr.
> 217-224]). In view of the above, the court concludes that
> the ALJ's RFC finding that plaintiff could perform "light
> work" as defined in 20 C.F.R. § 404.1567(b) "except that
> she could only occasionally climb, balance, stoop, kneel,
> crouch, or crawl" is supported by substantial evidence
> and that plaintiff could return to her past work as a bus

monitor.

(Dkt. 23; citing Dkt. 11, at 18-19).  For these reasons, the Commissioner says its final decision should be affirmed.

## III.   DISCUSSION

### A.   Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious.  *Sullivan v. Zebley*, 493 U.S. 521 (1990).  The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council.  *Bowen v. Yuckert*, 482 U.S. 137 (1987).  If relief is not found during this administrative review process, the claimant may file an action in federal district court.  *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the

record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005);

*Walters*, 127 F.3d at 528.  In deciding whether substantial evidence supports the

ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or

decide questions of credibility."  *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir.

2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).  "It is of course for

the ALJ, and not the reviewing court, to evaluate the credibility of witnesses,

including that of the claimant."  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247

(6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003)

(an "ALJ is not required to accept a claimant's subjective complaints and may . . .

consider the credibility of a claimant when making a determination of disability.");

*Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's

credibility determinations about the claimant are to be given great weight,

particularly since the ALJ is charged with observing the claimant's demeanor and

credibility.") (quotation marks omitted); *Walters*, 127 F.3d at 531 ("Discounting

credibility to a certain degree is appropriate where an ALJ finds contradictions

among medical reports, claimant's testimony, and other evidence.").  "However,

the ALJ is not free to make credibility determinations based solely upon an

'intangible or intuitive notion about an individual's credibility.'"  *Rogers*, 486

F.3d at 247, quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

     If supported by substantial evidence, the Commissioner's findings of fact

are conclusive.  42 U.S.C. § 405(g).  Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475.  "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record only.  *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001).  When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992).  "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).  There is no requirement, however, that

11

either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. Appx. 521, 526 (6th Cir. 2006).

B.     <u>Governing Law</u>

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord*, *Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. Appx. 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program (DIB) of Title II (42 U.S.C. §§ 401 *et seq*.) and the Supplemental Security Income Program (SSI) of Title XVI (42 U.S.C. §§ 1381 *et seq*.). Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled. F. Bloch, Federal Disability Law and Practice § 1.1 (1984). While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means:

12

> inability to engage in any substantial gainful activity by
> reason of any medically determinable physical or mental
> impairment which can be expected to result in death or
> which has lasted or can be expected to last for a
> continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also* 20 C.F.R. § 416.905(a)

(SSI).

The Commissioner's regulations provide that disability is to be determined

through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in
> substantial gainful activity, benefits are denied without
> further analysis.
>
> Step Two:  If the claimant does not have a severe
> impairment or combination of impairments, that
> "significantly limits ... physical or mental ability to do
> basic work activities," benefits are denied without
> further analysis.
>
> Step Three:  If plaintiff is not performing substantial
> gainful activity, has a severe impairment that is expected
> to last for at least twelve months, and the severe
> impairment meets or equals one of the impairments listed
> in the regulations, the claimant is conclusively presumed
> to be disabled regardless of age, education or work
> experience.
>
> Step Four:  If the claimant is able to perform his or her
> past relevant work, benefits are denied without further
> analysis.
>
> Step Five: Even if the claimant is unable to perform his
> or her past relevant work, if other work exists in the
> national economy that plaintiff can perform, in view of

> his or her age, education, and work experience, benefits
> are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing,

20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534. "If the Commissioner

makes a dispositive finding at any point in the five-step process, the review

terminates." *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence

and severity of limitations caused by her impairments and the fact that she is

precluded from performing her past relevant work." *Jones*, 336 F.3d at 474, cited

with approval in *Cruse*, 502 F.3d at 540. If the analysis reaches the fifth step

without a finding that the claimant is not disabled, the burden transfers to the

Commissioner. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006).

At the fifth step, the Commissioner is required to show that "other jobs in

significant numbers exist in the national economy that [claimant] could perform

given [his] RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at

241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the

decision must be affirmed even if the court would have decided the matter

differently and even where substantial evidence supports the opposite conclusion.

*McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545. In other words, where

substantial evidence supports the ALJ's decision, it must be upheld.

    C.    <u>Analysis</u>

        1.    Residual Functional Capacity Analysis

Plaintiff argues that the RFC is not supported by substantial evidence. The ALJ determined that "the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except that she could only occasionally climb, balance, stoop, kneel, crouch, or crawl." (Dkt. 6-2, Pg ID 45).

At Step Two of the sequential analysis, the ALJ determined that plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. In making this determination, the ALJ indicated that she had considered all of the impairments listed in Appendix 1, but paid particular attention to sections 1.04 and 11.14.[2] Importantly, the ALJ noted that "[n]o treating or examining physician has mentioned findings equivalent in severity to the criteria of any listed impairment, nor does the evidence show medical findings that are the same or equivalent to those of any listed impairment of the Listing of Impairments." (Dkt. 6-2, Pg ID 45). With respect whether plaintiff could meet the criteria for Listing 11.14 in

---

    [2] Section 11.14 is the enumerated section dealing with peripheral neuropathies. With disorganization of motor function as described in 11.04B, in spite of prescribed treatment. 11.04B indicates that the claimant would present with "significant and persistent disorganization of motor function in two extremities, resulting in sustained disturbance of gross and dexterous movements, or gait and station." 20 C.F.R. § Pt. 404, Subpt. P, App. 1

particular, the ALJ reasoned:

> The claimant complained of a burning, tingling sensation
> in her extremities, as well as occasional lower extremity
> numbness.  However, these symptoms do not meet or
> medically equal section 11.14 of the Appendix 1
> impairments.  Specifically, the record does not
> demonstrate persistent disorganization of motor function
> in at least two extremities, resulting in sustained
> disturbance in either gait or station or the ability to
> perform gross and dexterous movements. The claimant
> can walk and drive short distances and perform most
> household chores.

(*Id.*)  As noted above, in order for plaintiff to meet the criteria of Listing 11.14,

she would need to show that she has peripheral neuropathies with "disorganization

of motor function" (described as "[s]ignificant and persistent disorganization of

motor function in two extremities, resulting in sustained disturbance of gross and

dexterous movements, or gait and station....").  20 C.F.R. Pt. 404, Subpt. P, App.

1, Listing 11.14.

   The ALJ also considered the opinion evidence.  The ALJ noted that plaintiff

was a 51-year old woman who was 46 years old at the time of the alleged onset of

disability.  With respect to the medical opinions, the ALJ noted that despite

plaintiff's allegations of problems walking more than a few blocks, neither her

primary care provider, Dr. Eventure Bernardino, nor the State consultative

examiner, Dr. Siva Sankaran, observed any abnormalities in gait or station.  (Dkt.

6-2, Pg ID 46; citing Dkt. 6-7, Pg ID 261, 263).  Moreover, Dr. Sankaran did not

16

report any weakness in plaintiff's extremities or decreases in joint ranges of motion, which the ALJ concluded further supported a conclusion that plaintiff would be capable of light work. (Dkt. 6-2, Pg ID 46; citing Dkt. 6-7, at Pg ID 226). Dr. Paul LaClair, plaintiff's rehabilitation specialist, noted consistent decreased or altered sensation in the upper and lower extremities consistent with peripheral neuropathy or other neurological impairment; however, an August 8, 2012 electromyogram showed no evidence of right-sided neuropathy, radiculopathy, or plexopathy. The ALJ concluded that Dr. LaClair's findings of diminished sensation in plaintiff's extremities were consistent with limiting her to light work with occasional postural activities. While the ALJ indicated that Dr. Sankaran noted some tender points and scoliosis in plaintiff's lumbar spine, the record contains no medically acceptable imaging evidence to establish degenerative disk disease, and the ALJ noted that plaintiff was able to touch her toes and squat fully. (Dkt. 6-2, Pg ID 46, citing Dkt. 6-7, Pg ID 226). The ALJ also gave "great weight" to the opinion of State medical consultant, Dr. Margaret Fountain, who reviewed all of the available medical evidence and concluded that plaintiff was capable of light work with occasional postural activities, but no environmental or manipulative limitations. (Dkt. 6-2, 47; citing Pg ID 247-254).

With respect to the lay testimony, plaintiff argues that the ALJ wrongly characterized the testimony she gave regarding her inability to sleep due to pain;

however, the opinion indicates that the ALJ considered plaintiff's testimony that she had leg pain at night making it very difficult to sleep. (Dkt. 6-2, Pg ID 46). The ALJ also gave the opinion of plaintiff's husband in this regard "some weight", based on his personal relationship with the plaintiff. *See* SSR 06-3p. Plaintiff's argument that the ALJ misstated her testimony with respect to her ability to lift is also rejected, as the hearing testimony shows that plaintiff indicated that she could comfortably lift 10 pounds. (Dkt. 6-2, Pg ID 58).

The ALJ also considered plaintiff's activities of daily living including evidence that she could walk a few blocks or climb a flight of stairs with no difficulty, she was independent in her household chores, and that she experienced fatigue only occasionally. Plaintiff was also helping to care for children and an elderly family member in June 2012. Specifically, plaintiff testified that she was assisting her disabled father and visiting with her seven-year-old grandchildren a few times per week, but that she was not actively involved in their daily care. The ALJ also noted that plaintiff engaged in a relatively normal daily routine, including completing household chores, preparing simple meals, handling money, and driving short distances.

The undersigned is mindful that the Court of Appeals for the Sixth Circuit has recognized the difficulty that fibromyalgia presents for disability determinations:

> In stark contrast to the unremitting pain of which
> [fibromyalgia] patients complain, physical examinations
> will usually yield normal results-a full range of motion,
> no joint swelling, as well as normal muscle strength and
> neurological reactions. There are no objective tests
> which can conclusively confirm the disease; rather it is a
> process of diagnosis by exclusion and testing of certain
> 'focal tender points' on the body for acute tenderness
> which is characteristic in [fibromyalgia] patients.

*Preston v. Sec'y of Health & Human Servs.*, 854 F.2d 815, 817-18 (6th Cir. 1988).

"As it is difficult to pin down objective medical evidence to support a diagnosis of

fibromyalgia, it is even more difficult to produce objective medical evidence that

shows the degree to which fibromyalgia limits the functioning of its victim."

*Laxton v. Astrue*, 2010 WL 925791, *6 (E.D. Tenn. 2010) (emphasis added).  As

the medical literature and case law recognize:

> According to a recent Merck Manual entry, fibromyalgia
> is "a common nonarticular disorder of unknown cause
> characterized by generalized aching (sometimes severe),
> widespread tenderness of muscles, areas around tendon
> insertions, and adjacent soft tissues, as well as muscle
> stiffness, fatigue and poor sleep."  A diagnosis is based
> on clinical findings of generalized pain and tenderness,
> especially if disproportionate to physical findings;
> negative laboratory results despite widespread
> symptoms; and fatigue as a predominant symptom.
> Tender or 'trigger' points in the cervical, thoracic, and
> lumbar spinal areas, as well as the extremities, are
> palpated. Merck's notes that the 'classic' diagnosis
> requires 11 of 18 of the specified points to produce pain
> upon palpation, but that "most experts no longer require
> a specific number of tender points to make the diagnosis
> as originally proposed (more than 11 of 18).  Patients

> with only some of the specified features may still have
> fibromyalgia."

*Lawson v. Astrue*, 695 F. Supp. 2d 729, 735 (S.D. Ohio 2010), quoting Merck

Manual Online Medical Library, http://www.merck.com.  The Sixth Circuit and

the Social Security Administration have also recognized that it makes little sense

to rely on a lack of objective medical evidence when addressing both the diagnosis

and the treatment of fibromyalgia.  *See e.g.*, *Rogers v. Comm'r*, 486 F.3d 234, 243-

44 (6th Cir. 2007) ("[I]n light of the unique evidentiary difficulties associated with

the diagnosis and treatment of fibromyalgia, opinions that focus solely upon

objective evidence are not particularly relevant ..."); *Preston v. Sec'y of Health &*

*Human Serv.*, 854 F.2d 815, 820 (6th Cir.1988) (noting that fibromyalgia can be a

severe disabling impairment, and objective tests are of little help in determining its

existence or its severity); 64 FR 32410, 32411 (June 17, 1999) ("Fibromyalgia is a

'nonarticular' rheumatic disease, and objective impairment of musculoskeletal

function, including limitation of motion of the joints, is not present, in contrast to

the usual findings in 'articular' rheumatic diseases.  Joint examinations in

fibromyalgia are necessary only to exclude other rheumatic diseases because

physical signs other than tender points at specific locations are lacking. The pain

of fibromyalgia is not joint pain, but a deep aching, or sometimes burning pain,

primarily in muscles, but sometimes in fascia, ligaments, areas of tendon

insertions, and other areas of connective tissue. The evaluation criteria require that the pain be widespread, and that the symptoms be assessed based on whether they are constant or episodic, or require continuous medication, but they are not based on evaluations of individual joints or other specific parts of the musculoskeletal system.") (internal citations omitted).

The undersigned finds that the facts here are distinguishable from *Rogers*. First, in *Rogers*, two of plaintiff's treating physicians opined as to the severe limiting effects of claimant's fibromyalgia, yet the ALJ refused to find claimant's fibromyalgia a severe condition at Step Two. The ALJ subsequently accepted the non-treating doctors' opinions as to the claimant's limitations. The Sixth Circuit explained how the ALJ's focus on objective testing in marginalizing claimant's fibromyalgia was error. Here, the ALJ's opinion suggests a fundamental understanding of how to assess fibromyalgia. Indeed, plaintiff's primary physician made no functional limitation findings and, as noted by the ALJ, "[n]o treating or examining physician has mentioned findings equivalent in severity to the criteria of any listed impairment, nor does the evidence show medical findings that are the same or equivalent to those of any listed impairment of the Listing of impairments." (Dkt. 6-2, Pg ID 45). Despite this, the ALJ found at Step Two that plaintiff's fibromyalgia was a severe impairment. (Dkt. 6-2; Pg ID 44). Moreover, the ALJ acknowledged State consultative physician Dr. Sankaran's

21

finding that plaintiff had some tender points in her lumbar spine. (Dkt. 6-2, Pg ID 46). The court notes that plaintiff makes no treating physician argument in this case – in other words, plaintiff does not contest, as plaintiff did in *Rogers*, that the ALJ discounted her primary care physician's opinion in favor of a non-examining physician with respect to her limitations due to her fibromyalgia. In light of the above evidence, the court concludes that the fact that the ALJ relied, in part, on plaintiff's physical examinations or test results as being normal is not reversible error.

2.     Credibility

Plaintiff argues that the ALJ erred in concluding that her testimony as to the intensity and persistence of her symptoms associated with her impairments was not entirely credible. As the relevant Social Security regulations make clear, however, a claimant's "statements about [his] pain or other symptoms will not alone establish that [he is] disabled." 20 C.F.R. §§ 404.1529(a), 416.929. Instead, the Sixth Circuit has repeatedly held that "subjective complaints may support a finding of disability only where objective medical evidence confirms the severity of the alleged symptoms." *See Workman v. Comm'r of Soc. Sec.*, 105 Fed. Appx. 794, 801 (6th Cir. 2004); *see also Moon v. Sullivan*, 923 F.2d 1175, 1182-83 (6th Cir. 1990) ("[T]hough Moon alleges fully disabling and debilitating symptomology, the ALJ, may distrust a claimant's allegations ... if the subjective

22

allegations, the ALJ's personal observations, and the objective medical evidence contradict each other.").  "It [i]s for the [Commissioner] and his examiner, as the fact finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony."  *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001) (quoting *Myers v. Richardson*, 471 F.2d 1265, 1267 (6th Cir. 1972)).  As the Sixth Circuit has held, determinations of credibility related to subjective complaints of pain rest with the ALJ because "the ALJ's opportunity to observe the demeanor of the claimant 'is invaluable, and should not be discarded lightly.'"  *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 538 (6th Cir. 1981) (citation omitted).  Thus, an ALJ's credibility determination will not be disturbed "absent compelling reason."  *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). The ALJ is not required to accept the testimony of a claimant if it conflicts with medical reports, the claimant's prior statements, the claimant's daily activities, and other evidence in the record.  *See Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997).  Rather, when a complaint of pain or other symptoms is at issue, after the ALJ finds a medical condition that could reasonably be expected to produce the claimant's alleged symptoms, he must consider "the entire case record, including the objective medical evidence, statements and other information provided by treating or examining physicians ... and any other relevant evidence in the case record" to determine if the claimant's claims regarding the level of his

pain are credible. SSR 96-7p, 1996 WL 374186, at *1 (July 2, 1996); *see also* 20 C.F.R. § 404.1529.  Consistency between the plaintiff's subjective complaints and the record evidence "tends to support the credibility of the [plaintiff], while inconsistency, although not necessarily defeating, should have the opposite effect." *Kalmbach v. Comm'r of Soc. Sec.*, 409 Fed. Appx. 852, 863 (6th Cir. 2011).

Here, the undersigned concludes that plaintiff's credibility argument is merely an allegation that the evidence of record was not weighed properly by the ALJ.  Essentially, plaintiff is asserting a claim of improper "cherry-picking" of the record by the ALJ.  It is generally recognized that an ALJ "may not cherry-pick facts to support a finding of non-disability while ignoring evidence that points to a disability finding." *Smith v. Comm'r of Soc. Sec.*, 2013 WL 943874, at *6 (N.D. Ohio 2013), citing *Goble v. Astrue*, 385 Fed. Appx. 588, 593 (7th Cir. 2010) (citation omitted).  Yet, "the ALJ does not 'cherry pick' the evidence merely by resolving some inconsistencies unfavorably to a claimant's position." *Id.*, quoting *Solembrino v. Astrue*, 2011 WL 2115872, at *8 (N.D. Ohio 2011).  The undersigned cannot conduct a *de novo* review of the record evidence, and the findings of the ALJ are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion.  *Buxton v. Halter*, 246 F.3d 762, 772-73 (6th Cir. 2001) (citation omitted); *see also Her v. Comm'r of*

24

*Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir.1999) ("Even if the evidence could also support another conclusion, the decision of the [ALJ] must stand if the evidence could reasonably support the conclusion reached.") (citation omitted). This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference. *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir.1986) (citation omitted). Thus, it is not uncommon in disability cases for there to be some inconsistencies in the record. It is the duty of the ALJ to resolve any inconsistencies in the evidence, and the ALJ does not "cherry pick" the evidence merely by resolving some inconsistencies unfavorably to a claimant's position. *See Smith*, 2013 WL 943874, at *6 ("Rather than describing the ALJ's actions as 'cherry-picking,' the Sixth Circuit has explained that it could be more neutrally described as 'weighing the evidence.'"), citing *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 284 (6th Cir. 2009). In the view of the undersigned, that is what the ALJ did here. She weighed the evidence and made a determination, supported by substantial evidence, that plaintiff is not disabled. The undersigned sees no evidence of improper "cherry-picking" of the record or any improper credibility assessment.

## IV.   RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that plaintiff's Motion for Summary Judgment (Dkt. 24) be **DENIED**, that defendant's

Motion for Summary Judgment (Dkt. 23) be **GRANTED**, and that the decision of the Commissioner be **AFFIRMED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection

26

No. 2," etc.  If the Court determines that any objections are without merit, it may

rule without awaiting the response.

Date: June 13, 2016                          s/Stephanie Dawkins Davis
                                             Stephanie Dawkins Davis
                                             United States Magistrate Judge


## CERTIFICATE OF SERVICE

I certify that on June 13, 2016, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to all counsel of record.

                                             s/Tammy Hallwood
                                             Case Manager
                                             (810) 341-7887
                                             tammy_hallwood@mied.uscourts.gov